UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rose R.-T.,  
*on behalf of* J.A.G.,

      Plaintiff,

v.

Kilolo Kijakazi,  
Acting Commissioner of Social Security,

      Defendant.

Civ. No. 21-2634 (DSD/BRT)

REPORT AND
RECOMMENDATION

---

Clifford Michael Farrell, Esq., Manring & Farrell; Edward C. Olson, Esq., Disability Attorneys of Minnesota, counsel for Plaintiff.

Ana H. Voss, Esq., United States Attorney's Office; Chris Carillo, Esq. Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying an application for disability benefits that she filed on behalf of her minor child, JAG. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 17, 19.) Plaintiff raises two related issues on appeal. She argues that the Commissioner's decision must be reversed because (1) the ALJ's determination that JAG did not have a "marked" limitation in the functional domain of "ability to care for himself" was erroneous, and (2) the ALJ did not properly evaluate the opinions provided by psychological consultative examiner Dr. Miller, who opined that

JAG had a marked limitation in caring for himself, among other things. For the reasons set forth below, this Court recommends that Plaintiff's motion be granted in part, Defendant's motion be denied, and this matter be remanded to the ALJ for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

On June 25, 2019, Plaintiff filed an application for supplemental security income on behalf of her minor son JAG, who was twelve years old at the time, alleging that his disability began on August 29, 2016. (Tr. 214–15.)[1] JAG has several severe impairments, including the following: attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, oppositional defiant disorder, adjustment disorder, borderline intellectual functioning disorder, autism spectrum disorder/social pragmatic communication disorder, and asthma. (Tr. 22.)

Records reflect that JAG's mental impairments have created behavioral issues, including disruptive behaviors at home and at school. JAG's 2016 teacher reported that while JAG was slightly below or at grade level in some areas, JAG's math problem solving skills, reading comprehension, and written expression skills were far below others. (Tr. 476.) She also reported JAG had issues with work completion, he needed accommodations, she had concerns with JAG's distractions to himself and others, and she reported moderate to serious concerns with JAG's social interactions. (Tr. 477.) JAG had seven office discipline referrals during the 2018-2019 school year, seven behavioral

---

[1] Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 15.)

intervention forms documented by special education staff, and two bus referrals. (Tr. 488.) Both JAG's special education teacher and the Dean of Students reported that, with regard to caring for himself, JAG struggled to control his behavior when he was frustrated. (Tr. 743.) In addition, JAG was observed on May 28 and May 29, 2019, in a classroom setting, and was found to be on task only 60% and 50% of the time, respectively. (Tr. 488.)

In 2018, JAG's Full Scale IQ score was 74, which is in the very low range. (Tr. 537.) JAG also scored above 70 in the Behavior Assessment for Children – 2nd Edition (a score above 70 is considered clinically significant) for the following areas: externalizing problems, internalizing problems, behavioral symptoms index, hyperactivity, aggression, conduct problems, anxiety, depression, atypicality, anger control, bullying, developmental social disorder, emotional self-control, executive functioning, and negative emotionality. (Tr. 538.) Also in 2018, the following conclusions, among others, were made by Phoulavanh Young, PsyD after a full psychological evaluation of JAG:

> Results of cognitive functioning indicated that [JAG]'s verbal comprehension and visual spatial abilities were in the low average range. His fluid reasoning and processing speed abilities were in the average range. His working memory abilities were in the extremely low range. These scores resulted in a Full Scale IQ Score of 74 that was in the very low range and indicated Borderline Intellectual Functioning (IQ scores between 71-84).

> Results of behavioral and attentional functioning indicated that [JAG] had significant difficulty comprehending and completing schoolwork in a variety of academic areas such as in reading, spelling, and/or math, had difficulty learning and/or remembering concepts, needed extra instructions, had executive deficits, demonstrated weak study skills, was poorly

> organized, and had difficulty turning in assignments on time and seeking out and finding information on his own, consistent with his overall cognitive abilities.
>
> . . . .
>
> Results of behavioral functioning indicated that [JAG] had difficulty adapting to and recovering from changing situations than his peers, engaged in behaviors that are considered odd or strange, seemed disconnected from his surroundings, displayed behaviors stemming from worry, nervousness, or fear, was withdrawn, pessimistic, and sad, was generally lonely, had difficulty making friends, was unwilling to join group activities, demonstrated poor social skills, expressive, and receptive communications skills, and had difficulty complimenting others and making suggestions for improvements in a tactful and socially acceptable manner. These behaviors are consistent with his presentation of Autism.
>
> Results of behavioral and attentional functioning indicated that [JAG] meets criteria for Attention-Deficit/Hyperactivity Disorder, Combined Presentation as he reportedly engaged in many disruptive, impulsive, restless, and uncontrolled behaviors, had difficulty maintaining necessary levels of attention at school, had problems that disrupt academic performance and functioning in other areas, had poor concentration, attention, or difficulty keeping his mind on work, made careless mistakes, was easily distracted, gave up easily or was easily bored, avoided schoolwork, had high activity levels, was restless and/or impulsive, had difficulty being quiet, interrupted others, was easily excited, and had difficulty planning, organizing, initiating, or completing tasks.
>
> Although [JAG's mother] did not report significant conduct concerns in [JAG], results of behavioral and attentional functioning indicated that he was argumentative, defied adults' requests, had poor anger or impulse control, lost his temper easily, was physically and/or angry in response to environmental changes, had difficulty maintaining his self-control and controlling his behavior and mood when faced with stress and adversity, and got in trouble with teachers or principal. [JAG] appears to meet criteria for Unspecified Disruptive, Impulse-Control, and Conduct Disorder at this time. Future assessments should evaluate for Oppositional Defiant and/or Conduct Disorders.

(Tr. 541–42.)

JAG's application for benefits was denied initially and again on reconsideration. Plaintiff then requested a hearing, which was held before an administrative law judge ("ALJ") on December 18, 2020. (Tr. 36–67.) On March 2, 2021, the ALJ issued her decision, denying benefits based on the three-step sequential evaluation for childhood disability claims. At the first two steps, the ALJ found that JAG had not engaged in substantial gainful activity and that he had the severe impairments identified above. At the third step, the ALJ found that JAG does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. (Tr. 18); *see* 20 C.F.R. § 416.924(d). For childhood disability cases, this third step requires an evaluation of JAG's functioning across six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). A child's "impairment(s) is of listing-level severity if [he] ha[s] 'marked' limitations in two of the domains . . . or an 'extreme' limitation in one domain."[2] *Id.* § 416.926a(d). Here, the ALJ found that the only marked

---

2   The applicable regulations define a marked limitation as follows:

> [W]hen your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean

5

limitation that JAG had was in "attending and completing tasks." Relevant here on appeal, the ALJ found that JAG had less than marked limitation in the "ability to care for himself."[3] (Tr. 26.)

Plaintiff requested review of the ALJ's decision by the Appeals Counsel, which was denied on October 7, 2021, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff thereafter filed a Complaint with this Court, seeking review.

---

20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is defined as follows:

> [W]hen your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

*Id.* § 416.926a(e)(3)(i).

[3]   The "caring for yourself" domain requires consideration of how well JAG maintains his emotional and physical health, including the ability to fulfill wants and needs, as well as cope with stress and change, and caring for his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). This domain indicates that a school-age child (6 to 12 years old) "should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely." *Id.* § 416.926a(k)(2)(iv). Such children begin to realize they are capable of doing some activities, but not others; identify when they feel good or bad about themselves; understand differences between right and wrong, and what is acceptable and unacceptable behavior; and demonstrate control over behaviors. *Id.*

## DISCUSSION

### I. Standard of Review

In a childhood disability case such as this, the Court "reviews a decision by an ALJ 'to determine whether it is supported by substantial evidence on the record as a whole.'" *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (quoting *Bailey v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000); 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) (quotations omitted). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

II. Analysis

On appeal, Plaintiff argues that the ALJ erred in the functional-equivalence determination. Specifically, Plaintiff argues the ALJ erred in finding that JAG did not have a "marked" limitation in the functional domain of "ability to care for himself."[4] And, when making that finding, Plaintiff argues that the ALJ did not properly evaluate Dr. Miller's opinion that JAG had a marked limitation in caring for himself. This Court begins with the second issue first, since this Court's determination on that issue results in a recommendation for remand.

Dr. Miller examined and evaluated JAG's mental health condition on August 6, 2019. (Tr. 559.) Dr. Miller noted JAG's behavioral difficulties and found them consistent with a diagnosis of Other Specified Disruptive, Impulse-Control, and Conduct Disorder. (Tr. 566.) He also found that JAG's aggressive outbursts were secondary to his difficulties with impulse control and his need to manage his mood. (*Id.*) On November 15, 2020, Dr. Miller completed a child function questionnaire, and based on his earlier evaluation, he opined, among other things, that JAG had marked limitation in his ability to care for himself. (Tr. 1028–30.) The ALJ concluded that Dr. Miller's opinions were not persuasive. (Tr. 29.)

---

[4] As mentioned above, a child need only be found to have marked limitations in two domains of functioning to be disabled. *See* 20 C.F.R. § 416.926a(d). The ALJ found that JAG had a marked limitation in "attending and completing tasks," but determined that JAG had a less than marked limitation in the domain of "ability to care for himself." (Tr. 26.)

8

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 416.927(c). For claims like Plaintiff's that were filed on or after March 27, 2017, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under this regulation, the ALJ does not defer to any medical opinions, including opinions from the claimant's treating medical sources. 20 C.F.R. § 404.1520c(a). The ALJ instead considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability[5] and consistency[6] are the

---

[5] The regulations define the factor of "supportability" as follows:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).

[6] The regulations define the factor of "consistency" as follows:

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2). The word "consistent" in the regulations "is the same as the plain language and common definition of 'consistent'" and "includes consideration of factors such as whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854 (Jan. 18, 2017).

most important factors, and the ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

Here, the ALJ acknowledged Dr. Miller's opinion that JAG "has an extreme limitation in interacting and relating with others; marked limitation in moving about and manipulating objects and caring for himself; less than marked limitation in acquiring and using information; and no limitation in attending and completing tasks and health and physical well-being." (Tr. 29.) The entirety of the ALJ's explanation for why she determined Dr. Miller's limitations "not persuasive," however, is as follows:

> This evaluation of the claimant shows that the claimant had challenges with higher-level organization and planning, and social difficulties and emotional/behavioral functioning (C7F/8). However, these limitations are inconsistent with overall evidence, which shows that the claimant gets along well with peers, is able to compete in speed skating, and struggles more with attending and completing tasks (C11F/6; C23F/1). Moreover, during the Dr. Miller's evaluation, the claimant was not on any medication at that time (*See* C7F).

(*Id.*)

First, the ALJ lumps all of the limitations into one and does not parse out which of them are rebutted by "get[ting] along well with peers," being able "to compete in speed skating," "struggl[ing] more with attending and completing tasks," or by "not [being] on any medication." And significantly, relevant to the issue raised here on appeal, the ALJ

did not discuss the supportability factor with respect to Dr. Miller's opinion about JAG's ability to care for himself. On the child function questionnaire, Dr. Miller stated that his opinions were based on the in-person evaluation and the explanations that he provided in a form concurrent with his evaluation that supported each of his opinions. (Tr. 1028–30; *see also* Tr. 559–67.) The ALJ did not explain how or why Dr. Miller's explanations were not supported; instead, he stated in conclusory fashion that Dr. Miller's opinion was "inconsistent." (Tr. 29.) This does not explain how "supportability" was considered with respect to Dr. Miller's opinion, and in particular does not explain how "supportability" was considered with respect to Dr. Miller's opinion that JAG was markedly limited in the domain of caring for himself. Because the ALJ did not explain how this factor was considered, this case must be remanded for further consideration of Dr. Miller's opinion.

Further, although the ALJ mentioned the word "inconsistent," he did so in a vague and conclusory way when stating that Dr. Miller's opinions were "inconsistent with the overall evidence." (Tr. 28.) This is not a sufficient explanation of the inconsistency factor as it related to Dr. Miller's opinion about JAG's ability to care for himself. The ALJ did assert that JAG was able to get along with peers, was able to speed skate, and was not on medication at the time of the evaluation. (Tr. 28.) These facts, however, do not relate to JAG's ability to demonstrate control over behaviors.[7] It was JAG's behavioral difficulties, aggressive outbursts, and lack of impulse control that were the basis for

---

[7]    Arguably, records showing JAG got along with peers could be construed as inconsistent with Dr. Miller's opinion that JAG had "social difficulties." However, getting along with peers in and of itself does not rebut a finding that JAG had aggressive outbursts or lacked impulse control.

11

Dr. Miller's opinion that JAG had marked limitation in his ability to "care for himself." The things that the ALJ points to do not, therefore, show inconsistency with Dr. Miller's opinion. Therefore, the inconsistency factor must be reconsidered on remand as well so that a reasoned explanation is provided for the weight given to Dr. Miller's opinion.

Because this Court concludes that remand is required to fully analyze and explain the weight to be given to Dr. Miller's opinion, which would include his opinion that JAG is markedly limited in the domain of caring for himself (as that phrase is defined for purposes of analyzing functional-equivalence), a reconsideration of the functional-equivalence analysis is thus also required. And because a reconsideration of the functional-equivalence analysis is required, this Court need not address Plaintiff's other over-arching related argument that the ALJ's determination that JAG did not have a marked limitation in the functional domain of ability to care for himself was not supported. On remand, the ALJ should, in addition to weighing Dr. Miller's opinion, also consider the entire record when determining the ultimate question of whether JAG is markedly limited in the domain of caring for himself.

## RECOMMENDATION

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) be **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 19) be **DENIED**;

3.  This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C § 405(g) (sentence four), consistent with this Report and Recommendation; and

4.  Judgment be entered accordingly.

Date: October 4, 2022                    *s/ Becky R. Thorson*
                                         BECKY R. THORSON
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).